IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] FELIX COTTO-ORTIZ,<br>a/k/a "Dr. Cotto"; (Counts 1 to 6)<br><br>[2] JOSE MURATI-SEPULVEDA,<br>aka "Chiqui"; (Counts 1 to 6)<br><br>[3] EDUARDO LASALVIA-PRISCO,<br>a/k/a "Dr. Lasalvia"; (Counts 1 to 6)<br><br>[4] LAURA ALBERTINI-FOSSA,<br>a/k/a "Dr. Albertini"; (Counts 1 to 6)<br><br>[5] SYLVIA CUCCHI,<br>a/k/a "Dr. Cucchi"; (Counts 1 to 6)<br><br>[6] RUBEN OTERO-LOPEZ, a/k/a "Dr. Otero"; (Counts 1 to 6)<br><br>[7] JORGE NAZARIO-CORTEZ, a/k/a "Dr. Nazario"; (Counts 1, 4 and 6)<br><br>Defendants. | **INDICTMENT**<br><br>CRIMINAL NO. 07-75 (CCC)<br><br>Title 18, United States Code, Sections:<br><br>2 (Aiding and abetting),<br><br>371 (Conspiracy to defraud an agency of the United States),<br><br>1343 (Wire fraud),<br><br>1349 (Conspiracy to commit wire fraud),<br><br>Title 21, United States Code, Sections:<br><br>331(d)(Delivery for introduction into interstate commerce of non-approved new drug),<br><br>333(a)(2) (with intent to defraud and mislead)<br><br>Title 18, United States Code, Section: 982 (Forfeiture Allegation)<br><br>**(SIX COUNTS)** |

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to this indictment:

### THE FDA REGULATORY SCHEME AS TO NEW DRUGS

1. The United States Food and Drug Administration (FDA) was the federal agency charged with the responsibility of protecting the health and safety of the American public by

INDICTMENT
United States v. Félix Cotto, et als.
Page 2

enforcing the federal Food, Drug, and Cosmetic Act ("FDCA"). The FDA's responsibilities under the FDCA included regulating the manufacture, labeling, and distribution of all drugs in the United States.

2. The FDCA as amended and the Regulations issued pursuant to the Act, establish, inter alia, a product pre-clearance system under which a new drug may not be marketed interstate until it has been approved by the Commissioner as "safe and effective" for its intended use. The burden is on the sponsor of the drug to demonstrate its safety and effectiveness.

3. In the standard drug development process, new drug candidates are tested in vitro (outside of any living organism) and on animals before human testing begins, during "preclinical testing."

4. The role of the FDA begins when a drug sponsor submits an Investigational New Drug Application ("INDA"), which includes the results of the preclinical testing of the drug and other relevant information.

5. Based on this data, the FDA decides whether it is reasonably safe to move forward to testing of the drug on humans.

6. If the FDA approves testing in humans and the INDA is approved by a local Institutional Review Board (IRB), a panel of scientists and non-scientists that oversees clinical research, Phase I clinical trials can begin.

7. Phase I testing of a drug is usually performed on healthy volunteers, and is intended to determine a drug's side effects and how the drug is metabolized and excreted. If Phase I studies do not reveal unacceptable toxicity, Phase II studies may be initiated.

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 3 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 3

8. Phase II studies are focused on whether a drug is effective and provide preliminary data on how a drug works in patients with a particular condition.

9. Phase III studies begin if effectiveness is shown in Phase II, and are more extensive than Phase II studies, usually involving more patients and a longer study period.

10. After Phase III trials, when a drug sponsor is ready to seek approval from the FDA to market its new drug in the United States, it submits a formal request called a New Drug Application ("NDA"). The NDA must include all human and animal data on a drug, as well as other relevant information.

## PHARMA BLOOD

11. Pharma Blood was a business that advertised, marketed and distributed a cancer treatment for cancer patients by way of a vaccine, known as the "Pharma Blood Cancer Vaccination" (PCV). The vaccine was a form of Autologous Hemoderivative Cancer Immunotherapy, that is, a processed substance that was derived from the patient's blood, that Pharma Blood advertising claimed prevented cancer from progressing to other parts of the body.

12. Pharma Blood's cancer vaccine was a drug that was not approved for use in humans in the United States by the FDA.

## PHARMA BLOOD-RELATED CORPORATIONS

The following corporations were associated to the Pharma Blood Vaccine Treatment:

13. Pharma Blood, Inc. was a profit corporation organized under the laws of the State of Florida on April 23, 2002, and duly authorized to do business in Puerto Rico since January 28, 2004.

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 4 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 4

14. Pharma Blood Medical Center, Inc. was a profit corporation organized under the laws of the Commonwealth of Puerto Rico on or about March 21, 2003. Pharmablood Medical Center, Inc. possessed bank accounts at Banco Bilbao Viscaya and Doral Bank, both financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

15. Pharma Blood Research Corporation was a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico on August 18, 2003.

## THE DEFENDANTS

16. Defendant FELIX COTTO-ORTIZ (hereinafter referred to as "COTTO") was a physician not licensed to practice medicine in Puerto Rico, and was President and Executive Director of Pharma Blood Medical Research Center, Inc.

17. Defendant JOSE MURATI-SEPULVEDA (hereinafter referred to as "MURATI") was the Chief Executive Officer ("CEO") of Pharma Blood Research Medical Center, Inc.

18. Defendant EDUARDO LASALVIA-PRISCO (hereinafter referred to as "LASALVIA") was Vice-President of Pharma Blood, Inc., and a physician authorized to practice medicine in Puerto Rico from July 1, 2003 to June 30, 2004, at the facilities of the San Juan Bautista Hospital and under the direct supervision of said hospital's director.

19. Defendant LAURA ALBERTINI-FOSSA (hereinafter referred to as "ALBERTINI") was the President of Pharma Blood, Inc., and the wife of defendant LASALVIA.

20. Defendant SYLVIA CUCCHI (hereinafter referred to as "CUCCHI") was an individual not authorized to practice medicine in Puerto Rico.

21. Defendant RUBEN OTERO (hereinafter referred to as "OTERO") was a physician

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 5 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 5

authorized to practice medicine in Puerto Rico.

22. Defendant JORGE NAZARIO-CORTEZ (hereinafter referred to as "NAZARIO") was a physician authorized to practice medicine in Puerto Rico.

## COUNT ONE
### Conspiracy to defraud an agency of the United States
### Title 18, United States Code, Section 371

The General Allegations section of this Indictment are realleged and incorporated by reference herein, as though fully set forth herein. From on or about March 2003 and continuing through to on or about June 24, 2004, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] FELIX COTTO-ORTIZ,
a/k/a "Dr. Cotto",
[2] JOSE MURATI-SEPULVEDA,
aka "Chiqui",
[3] EDUARDO LASALVIA-PRISCO,
a/k/a "Dr. Lasalvia",
[4] LAURA ALBERTINI-FOSSA,
a/k/a "Dr. Albertini",
[5] SYLVIA CUCCHI,
a/k/a "Dr. Cucchi"
[6] RUBEN OTERO-LOPEZ,
a/k/a "Dr. Otero",
[7] JORGE NAZARIO-CORTEZ,
a/k/a "Dr. Nazario",

the defendants herein, knowingly and willfully conspired with each other to defraud an agency of the United States in any manner and any purpose, to wit, defendants agreed to impair, obstruct, and defeat the lawful function of the federal Food and Drug Administration by interfering with its lawful function of regulating the interstate distribution of drugs; and to that effect at least one of the defendants mentioned above did an act to effect the object of the conspiracy, in violation of

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 6 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 6

Title 18, United States Code, Section 371.

## OBJECT OF THE CONSPIRACY

The object of the unlawful conspiracy was for defendants [1] FELIX COTTO-ORTIZ, a/k/a "Dr. Cotto"; [2] JOSE MURATI-SEPULVEDA, aka "Chiqui"; [3] EDUARDO LASALVIA-PRISCO, a/k/a "Dr. Lasalvia"; [4] LAURA ALBERTINI-FOSSA, a/k/a "Dr. Albertini"; [5] SYLVIA CUCCHI, a/k/a "Dr. Cucchi"; [6] RUBEN OTERO-LOPEZ, a/k/a "Dr. Otero"; and [7] JORGE NAZARIO-CORTEZ, a/k/a "Dr. Nazario", to unlawfully market and distribute in interstate commerce a drug that was not approved for use in human beings in the United States by the federal Food and Drug Administration, for personal gain and profit, for the purpose of impairing, obstructing and defeating the lawful function of said agency of the United States.

## MANNERS AND MEANS

1. It was a manners and means of the unlawful conspiracy that Pharma Blood offered to the general public in Puerto Rico and elsewhere a vaccine, that is, a drug that was not approved for use in humans in the United States by the FDA.

2. It was a manner and means of the unlawful conspiracy that Pharma Blood advertised and marketed its treatment to the general public worldwide in its website: www.pharmablood.com.

3. It was a manner and means of the unlawful conspiracy that Pharma Blood advertised and marketed its vaccine to the general public in Puerto Rico in television programs and newscasts, general circulation newspapers, magazines and through printed advertising, to

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 7 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 7

create the appearance that the vaccine was marketed and distributed legally in the United States.

    4.    It was a manner and means of the unlawful conspiracy that Pharma Blood's website (www.pharmablood.com) was displayed prominently in its advertising in Puerto Rico.

    5.    It was a manner and means of the unlawful conspiracy that Pharma Blood falsely claimed in its website that its vaccine was exempted from FDA approval since it was a medical procedure that complied with FDA regulations that could be legally performed by physicians when the intent was the practice of medicine.

    6.    It was a manner and means of the unlawful conspiracy that Pharma Blood had its treatment center at the San Juan Bautista Hospital, in Caguas, Puerto Rico.

    7.    It was a manner and means of the unlawful conspiracy that cancer patients were charged approximately $8,000 to $12,900 for Pharma Blood's non-FDA approved vaccine.

    8.    It was a manner and means of the unlawful conspiracy that defendant COTTO, for the purpose of promoting Pharma Blood's Cancer Vaccination in Puerto Rico, used business cards where he appeared as "Dr. Félix Cotto, MD", despite the fact that defendant failed to pass the Puerto Rico medical bar examination in numerous instances and therefore, was not a licensed physician in Puerto Rico and was not authorized by law to announce himself as a medical doctor.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objectives thereof, at least one of the co-conspirators executed at least one of the following overt acts listed below:

    1.    On or about March 21, 2003, defendant COTTO submitted to the Puerto Rico State Department a Certificate of Incorporation for Pharma Blood Medical Center Corporation.

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 8 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 8

2. On or about May 1, 2003, a Patent Technology License Agreement was signed between PharmaBlood, Inc., represented by defendants LASALVIA and ALBERTINI, and PharmaBlood Medical Center, Inc., represented by defendant MURATI.

3. On or about May 13, 2003, defendant COTTO signed an advertisement contract with *El Nuevo Día*, a daily newspaper of general circulation in Puerto Rico, for an advertisement in said newspaper of a conference about a therapeutic vaccine against cancer, to be provided by defendant LASALVIA.

4. From on or about June 17 to June 29, 2003, at Pharma Blood's Treatment Center in the San Juan Bautista Hospital in Caguas, Puerto Rico, while not possessing any license to practice medicine in Puerto Rico, defendants LASALVIA and CUCCHI examined various patients and ordered prescription drugs for them in connection with Pharma Blood's treatment.

5. On or about July 1, 2003, defendant COTTO, representing Pharma Blood Medical Center, Inc., signed a lease agreement (*Contrato de Arrendamiento,* in Spanish) with San Juan Bautista Medical Center, in which office space at said hospital was rented to Pharma Blood for a three-year period.

6. From June 16, 2003, to on or about January 26, 2004, defendant CUCCHI examined patients, recommended prescription drugs, and injected vaccines into patients in connection with the Pharma Blood vaccine treatment, while not possessing a license to practice medicine in Puerto Rico.

7. From on or about July 1, 2003 onwards, defendant LASALVIA examined patients, ordered medications and laboratory tests for Pharma Blood patients and extracted blood from

Case 3:07-cr-00075-CCC    Document 2    Filed 02/28/07    Page 9 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 9

patients to prepare Pharma Blood vaccines, all without supervision by the medical director of the San Juan Bautista Hospital, as LASALVIA's provisional medical license, issued on July 1, 2003, so required.

8. On or about July 10, 2003, defendant COTTO sent a fax letter to the *Colegio de Médicos Cirujanos de Puerto Rico*, (Puerto Rico Physician-Surgeon Bar) requesting membership of defendant LASALVIA in said institution.

9. On or about July 10, 2003, defendant MURATI signed an advertisement contract with *El Nuevo Día*, for the publishing of Pharma Blood advertising in a publication known as *Salud Al Día* (Current Health).

10. On or about July 18, 2003, defendant MURATI signed an Agreement for Investigative Services with a private detective, and paid $1,000 in advance, for the investigation of an oncologist that had requested information from the Puerto Rico Medical Examining Board about defendant LASALVIA.

11. On or about August 4, 2003, defendant MURATI issued a Pharma Blood Memorandum ordering that no treatment for any patient could commence unless the patient paid at least one third (1/3) of the treatment's cost in advance.

12. On or about August 5, 2003, defendant MURATI signed an Advertisement Agreement with HCP Aboard Publishing, Inc. for Phama Blood advertising.

13. On or about August 16, 2003, defendant COTTO falsely stated in a letter that defendant OTERO had been working for approximately two (2) years at Pharma Blood's Cancer Center, when in reality, Pharma Blood commenced operations in Puerto Rico around two months

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 10 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 10

earlier, in June 2003.

14. On or about August 18, 2003, defendant COTTO signed an advertisement contract with *El Nuevo Día* in relation to an expert panel conference about Advances in Oncology, to take place on August 22, 2003 at the San Juan Bautista Hospital.

15. On or about September 19, 2003, defendant COTTO wrote a letter to the FDA in San Juan, Puerto Rico, requesting an opinion by said federal agency as to whether the Pharma Blood Cancer Vaccination protocol required FDA approval.

16. On October 13, 2003, defendant LASALVIA appeared in a Puerto Rico Channel 2 television program announcing the availability of Pharma Blood's Cancer Vaccination to the general public.

17. On October 13, 2003, defendants COTTO, OTERO and CUCCHI appeared in a Channel 2 television news broadcast describing Pharma Blood's Cancer Vaccination.

18. On October 14, 2003, defendant COTTO wrote a letter to an FDA official in San Juan, Puerto Rico, seeking the agency's advise as to whether Pharma Blood's Cancer Vaccination was subject to FDA regulation.

19. Since it commenced operations in Puerto Rico, up to on or about November 19, 2003, Pharma Blood Medical Center, Inc. collected fees from patients and consultation fees in relation to Pharma Blood's Cancer Vaccination, totaling approximately $246,841.02, while incurring in advertising expenses totaling approximately $58,701.94.

20. On or about November 20, 2003, defendant ALBERTINI faxed a letter from Pharma Blood's offices in North Miami, to defendant COTTO in Puerto Rico, where ALBERTINI

Case 3:07-cr-000(??)-CCC   Document 2   Filed 02/28/07   Page 11 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 11

warned COTTO that FDA regulations prohibited the dissemination of information to the public about treatments and drugs not approved by FDA.

21. On or about December 4, 2003, defendants LASALVIA and OTERO appeared in a Channel 4 television news report aired that day announcing the Pharma Blood Cancer Vaccination to the general public and that showed the injecting of a patient with the vaccine; this news report aired two (2) days after a federal search warrant was executed upon the premises of Pharma Blood's treatment center in San Juan Bautista Hospital.

22. On or about December 12, 2003, in a meeting with board members of San Juan Bautista Hospital, defendant COTTO falsely denied that defendant LASALVIA had started to work as a physician at Pharma Blood before receiving authorization by the Puerto Rico Medical Examining Board to practice medicine in Puerto Rico.

23. On or about January 30, 2004, defendants COTTO and LASALVIA submitted a research grant application titled "Pharma Blood Research Corporation" to the Department of Health and Human Services' National Institute of Health.

24. On or about February 19, 2004, defendant COTTO received estimates from Puerto Rico general circulation newspapers *El Nuevo Día* and from *El Vocero*, of costs of placing Pharma Blood advertisements in said newspapers.

25. On or about February 20, 2004, defendant COTTO signed a Contract/Invoice, number 503, with a publication known as '*Diario Vivir*', for the purpose of advertising Pharma Blood in its March 2004 issue.

26. On or about March 3, 2004, defendant ALBERTINI requested an Investigational

Case 3:07-cr-000 -CCC   Document 2   Filed 02/28/07   Page 12 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 12

New Drug Exemption and submitted an Investigational New Drug Application (INDA) for Pharma Blood's vaccine from the FDA's Office of Blood Research and Review, where she listed defendant LASALVIA as the lead investigator and defendants CUCCHI and OTERO as assistant investigators, and where defendant ALBERTINI agreed not to begin clinical investigations until thirty (30) days after FDA's receipt of the INDA unless she received earlier notification by FDA that the studies may begin, and where defendant ALBERTINI further agreed not to begin or continue clinical investigations covered by the INDA if those studies were placed on clinical hold.

27. Despite the representations made by defendant ALBERTINI to the FDA mentioned in the preceding paragraph, between on or about March 4, 2004 and April 7, 2004, persons associated to Pharma Blood continued to market and inject the non-approved vaccine into human beings in its Treatment Center in Caguas, Puerto Rico and continued to charge patients for said vaccine. During this time defendants LASALVIA and OTERO evaluated individuals for Pharma Blood's treatment and defendant COTTO provided information to individuals regarding Pharma Blood's treatment.

28. On or about March 25 and March 26, 2004, defendant LASALVIA extracted blood from approximately seven (7) individuals at Pharma Blood's facilities in Caguas, in Puerto Rico, in connection with the Pharma Blood vaccine.

29. On or about March 30, 2004, defendant COTTO signed an Advertising Contract with a weekly publication known as 'Todo', for Pharma Blood advertising to be published in the April 1 and April 8, 2004 weekly issues of said publication.

30. On or about April 7, 2004, defendant ALBERTINI had a telephonic conversation

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 13 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 13

with FDA officials where ALBERTINI was informed that Pharma Blood's INDA was placed on clinical hold.

31. From on or about April 8 to May 7, 2004, persons associated to Pharma Blood continued to distribute and inject the non-approved vaccine into human beings in its Treatment Center in Caguas, Puerto Rico and continued to charge patients for said vaccine. During this time, defendant COTTO provided information to individuals regarding Pharma Blood's treatment and defendant RUBEN OTERO evaluated individuals for Pharma Blood's treatment and read results of tests related to the Pharma Blood Cancer Vaccination.

32. After being notified in writing that Pharma Blood's INDA had being placed in clinical hold by the FDA, from on or about May 8, 2004 through June 24, 2004, persons associated to Pharma Blood continued to distribute and inject the non-licensed vaccine into human beings in its Treatment Center in San Juan Bautista Hospital, in Caguas, Puerto Rico and continued to charge patients for said vaccine. During this time defendant COTTO provided information to individuals regarding Pharma Blood's treatment and also participated in the preparation of the Pharma Blood vaccine; defendant OTERO evaluated individuals for Pharma Blood's treatment and read results of tests related to the Pharma Blood vaccine; and defendant NAZARIO evaluated individuals for Pharma Blood's treatment, extracted blood from individuals for the preparation of the vaccine and read results of tests associated with the vaccine.

33. Pharma Blood continued its operations in Puerto Rico up to June 24, 2004, when a second federal search warrant was executed upon the premises of Pharma Blood's treatment center in Hospital San Juan Bautista, in Caguas, Puerto Rico.

Case 3:07-cr-000-CCC   Document 2   Filed 02/28/0   Page 14 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 14

## COUNT TWO
### Conspiracy to commit wire fraud
### Title 18, United States Code, Section 1349

The General Allegations section of this Indictment is realleged and incorporated by reference herein, as though fully set forth herein. From on or about March 2003 and continuing through to on or about June 24, 2004, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] FELIX COTTO-ORTIZ,
a/k/a "Dr. Cotto",
[2] JOSE MURATI-SEPULVEDA,
aka "Chiqui",
[3] EDUARDO LASALVIA-PRISCO,
a/k/a "Dr. Lasalvia",
[4] LAURA ALBERTINI-FOSSA,
a/k/a "Dr. Albertini",
[5] SYLVIA CUCCHI,
a/k/a "Dr. Cucchi"
[6] RUBEN OTERO-LOPEZ,
a/k/a "Dr. Otero",
[7] JORGE NAZARIO-CORTEZ,
a/k/a "Dr. Nazario",

the defendants herein, knowingly and willfully conspired to commit an offense against the United States, that is, having devised a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises, to cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, a violation of Title 18, United States Code, Section 1343; all in violation of Title 18, United States Code, Section 1349.

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 15 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 15

## COUNT THREE
### Wire fraud
### Title 18, United States Code, Sections 1343 and 2

The General Allegations section of this Indictment is realleged and incorporated by reference herein, as though fully set forth herein. On or about August 4, 2003, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] FELIX COTTO-ORTIZ,
a/k/a "Dr. Cotto";
[2] JOSE MURATI-SEPULVEDA,
aka "Chiqui";
[3] EDUARDO LASALVIA-PRISCO,
a/k/a "Dr. Lasalvia";
[4] LAURA ALBERTINI-FOSSA,
a/k/a "Dr. Albertini";
[5] SYLVIA CUCCHI,
a/k/a "Dr. Cucchi";
[6] RUBEN OTERO-LOPEZ,
a/k/a "Dr. Otero";

the defendants herein, while aiding and abetting each other, and having devised a scheme and artifice to defraud the Federal Food and Drug Administration and the general public by intentionally, willfully and knowingly marketing and distributing a drug not approved for use in humans in the United States, and for obtaining money by means of false and fraudulent pretenses, representations and promises, did cause to be transmitted by means of wire communication in foreign commerce, writings and signals for the purpose of executing such scheme, that is, defendants caused that an electronic mail communication be sent from ceo@pharmablood.com in the United States to lacoulverine@wanadoo.fr, in France, for the purpose of facilitating travel arrangements from France to Puerto Rico of a person to be injected with the Pharma Blood vaccine in Puerto Rico; in violation of Title 18, United States Code, Sections 1343 and 2.

Case 3:07-cr-00075-CCC    Document 2    Filed 02/28/07    Page 16 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 16

## COUNT FOUR
### Wire fraud
### Title 18, United States Code, Sections 1343 and 2

The General Allegations section of this Indictment is realleged and incorporated by reference herein, as though fully set forth herein. On or about September 2, 2003, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] FELIX COTTO-ORTIZ,
a/k/a "Dr. Cotto";
[2] JOSE MURATI-SEPULVEDA,
aka "Chiqui";
[3] EDUARDO LASALVIA-PRISCO,
a/k/a "Dr. Lasalvia";
[4] LAURA ALBERTINI-FOSSA,
a/k/a "Dr. Albertini";
[5] SYLVIA CUCCHI,
a/k/a "Dr. Cucchi";
[6] RUBEN OTERO-LOPEZ,
a/k/a "Dr. Otero";

the defendants herein, while aiding and abetting each other, and having devised a scheme and artifice to defraud the Federal Food and Drug Administration and the general public by intentionally, willfully and knowingly marketing and distributing a drug not approved for use in humans in the United States, and for obtaining money by means of false and fraudulent pretenses, representations and promises, did cause to be transmitted by means of wire communication in interstate commerce, writings and signals for the purpose of executing such scheme, that is, defendants caused a fax communication containing instructions as to the preparation and the administering of the Pharma Blood vaccine, to be transmitted from the offices of Pharma Blood Cancer Center in Puerto Rico, to telephone number (936) 291-3519 in the State of Florida; in violation of Title 18, United States Code, Sections 1343 and 2.

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 17 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 17

## COUNT FIVE
### Delivery for introduction into interstate commerce of non-approved new drug with intent to defraud and mislead
### Title 21, United States Code, Sections 331(d) and 333(a)(2)
### Title 18, United States Code, Section 2

The General Allegations section of this Indictment is realleged and incorporated by reference herein, as though fully set forth herein.

On or about September 30, 2003, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] FELIX COTTO-ORTIZ,
a/k/a "Dr. Cotto";
[2] JOSE MURATI-SEPULVEDA,
aka "Chiqui";
[3] EDUARDO LASALVIA-PRISCO,
a/k/a "Dr. Lasalvia";
[4] LAURA ALBERTINI-FOSSA,
a/k/a "Dr. Albertini";
[5] SYLVIA CUCCHI,
a/k/a "Dr. Cucchi";
[6] RUBEN OTERO,
a/k/a "Dr. Otero";

the defendants herein, while aiding and abetting each other, did unlawfully cause the delivery for introduction into interstate commerce of a non-approved new drug, as the term is defined in Title 21, United States Code, Section 355, with intent to defraud and mislead, that is, defendants caused that a parcel containing dry ice and a human blood sample, that is, components of the Pharma Blood Cancer Vaccine, be delivered to FedEx for shipment into interstate commerce from Puerto Rico to Florida, with intent to defraud and mislead, in violation of Title 21, United States Code, Section 331(d) and 333(a)(2) and Title 18, United States Code, Section 2.

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 18 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 18

## COUNT SIX
### Forfeiture Allegation
### Title 18, United States Code, Section 982

Upon conviction of one or more of the offenses alleged in Count Two (2) to Four (4) of this Indictment,

[1] FELIX COTTO-ORTIZ,
a/k/a "Dr. Cotto",
[2] JOSE MURATI-SEPULVEDA,
aka "Chiqui",
[3] EDUARDO LASALVIA-PRISCO,
a/k/a "Dr. Lasalvia",
[4] LAURA ALBERTINI-FOSSA,
a/k/a "Dr. Albertini",
[5] SYLVIA CUCCHI,
a/k/a "Dr. Cucchi"
[6] RUBEN OTERO-LOPEZ,
a/k/a "Dr. Otero",
[7] JORGE NAZARIO-CORTEZ,
a/k/a "Dr. Nazario",

the defendants herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982 any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the violations of Title 18, United States Code, Section 1349 and 1343, conspiracy to commit wire fraud and wire fraud, respectively, and all property traceable to such property as a result of the defendants' conviction of Counts Two (2) to Four (4) of this indictment, in an amount in excess of two hundred forty six thousand eight hundred and forty-one dollars and two cents ($246,841.02).

If any of the above-described forfeitable property, as a result of any act or omission of the defendants: cannot be located upon the exercise of due diligence; has been transferred or sold

Case 3:07-cr-00075-CCC   Document 2   Filed 02/28/07   Page 19 of 19

INDICTMENT
United States v. Félix Cotto, et als.
Page 19

to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

All in accordance with Title 18, United States Code, Section 982(a)(1), and Rule 32.2, Federal Rules of Criminal Procedure.

ROSA E. RODRIGUEZ-VELEZ
United States Attorney

TRUE BILL

Jose A. Ruiz-Santiago
Assistant U.S. Attorney
Chief, Criminal Division

for Desirée Laborde-Sanfiorenzo
Assistant U.S. Attorney
Deputy Chief, Criminal Division

Julia Díaz-Rex
Assistant U.S. Attorney

Dated: 02/28/2007